**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RESTORE INTEGRATIVE WELLNESS** | : | |
| **CENTER, LLC, et al.** | : | |
| | : | **Civil Action No.  22-02888** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **BOROUGH OF YEADON, et al.** | : | |
| | : | |
| **Defendants.** | : | |

<u>**ORDER**</u>

AND NOW, this     day of                    , 2022, upon consideration of Defendants'

Motion to Dismiss Plaintiffs' Amended Complaint and Plaintiffs' response thereto, it is hereby

ORDERED and DECREED that:  Plaintiffs' Amended Complaint is dismissed.

_____
The Honorable Chad F. Kenney

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RESTORE INTEGRATIVE WELLNESS** | : | |
| **CENTER, LLC, et al.** | : | |
| | : | **Civil Action No.  22-02888** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **BOROUGH OF YEADON, et al.** | : | |
| | : | |
| **Defendants.** | : | |

---

**DEFENDANTS' MOTION FOR DISMISSAL OF PLAINTIFFS'**
**AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)**
**AND A MORE DEFINITE STATEMENT PURSUANT TO F.R.C.P. 12(e)**

The Defendants herein include the Borough of Yeadon, the Zoning Hearing Board of the Borough of Yeadon and four individual Defendants, three of whom are members of the Zoning Hearing Board and one of whom is the President of Yeadon Borough Council.  Said Defendants hereby move to dismiss Plaintiffs' Amended Complaint as it fails to assert a viable claim upon which relief can be granted.  Plaintiffs are Restore Integrative Wellness Center, LLC and what Plaintiffs entitle R&R Yeadon, LLC, record owner of the property in question and an affiliated entity of the former.  ¶1 and 2.  Plaintiffs' Amended Complaint contains eight counts wherein both Plaintiffs assert claims against all Defendants in each count without discrimination relating to the conduct of any particular defendants.  Defendants cannot determine which counts are set forth against which Defendants under these circumstances.  Plaintiffs' business remains open.

For the reasons set forth more fully in the attached memorandum of Law which is incorporated herein by reference, Defendants assert that the Amended Complaint fails to state a viable claim upon which relief can be granted.

**WHEREFORE,** Moving Defendants respectfully request the Court grant the relief set forth in the attached proposed Order.

Respectfully Submitted,
**HOLSTEN ASSOCIATES, P.C.**

**BY:** **RPD2724**

**ROBERT P. DiDOMENICIS, ESQUIRE**
**Attorney ID No. 30482**
**115 N. Jackson Street**
**Media, PA  19063**
**(610) 566-7583**
**rdidomenicis@holstenassoc.com**
**Attorney for Defendants**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RESTORE INTEGRATIVE WELLNESS** | : | |
| **CENTER, LLC, et al.** | : | |
| | : | **Civil Action No.  22-02888** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **BOROUGH OF YEADON, et al.** | : | |
| | : | |
| **Defendants.** | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' AMENDED
COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) AND A
MORE DEFINITE STATEMENT PURSUANT TO F.R.C.P. 12(e)**

## I.   INTRODUCTION

Plaintiffs, Restore Integrative Wellness Center, LLC (hereinafter referred to as "Restore Wellness") and R&R Yeadon, LLC (hereinafter referred to as "R&R") are the owner and operator of a medical marijuana dispensary and the record owner of the property located in the Borough of Yeadon, respectively.  ¶1 and 2.  They have sued the Borough of Yeadon, the Zoning Hearing Board, President of Yeadon Borough Council and three members of the Zoning Hearing Board.  ¶3-9.

Plaintiffs assert that their claims arise following the issuance of a zoning permit by the Borough of Yeadon and, thereafter, a challenge to that zoning permit by concerned citizens was brought which resulted in the Zoning Hearing Board vacating the permit.  Plaintiffs assert that this has given rise to the various causes of action asserted in the Amended Complaint.

Plaintiffs have also filed an appeal to the Court of Common Pleas of Delaware County. Following a hearing, the Honorable John J. Whelan remanded the matter back to the Zoning

Hearing Board for further evidence.  (See Exhibit D1).  The second hearing before the Zoning

Hearing Board has not taken place as of yet.

Defendants assert herein that the claims made by Plaintiffs are not ripe, not appropriately

pleaded or the facts fail to state the cause of action for the given claims and/or damages asserted.

Furthermore, Plaintiffs' business remains in operation.

Counsel have had a lengthy discussion and exchange of correspondence regarding these

issues and have not been able to reach an agreement thereon with the exception of the issue that

the Pennsylvania Constitution is not available to provide monetary damages to the Plaintiffs.

(Count VI) and, further, Plaintiffs removed the former Count III which was a non-specific claim

under 42 U.S.C. §1983.  Thereafter, Plaintiffs have added a defamation count which is set forth

as Count V.

## II.     FACTS SET FORTH IN THE AMENDED COMPLAINT

On September 8, 2020, Plaintiffs entered into an Agreement of Sale for the property

which was a former bank building which was contingent upon receiving appropriate regulatory

approvals from the Borough and the Commonwealth of Pennsylvania.  ¶12.  On November 24,

2020, Plaintiffs received zoning approval to operate a medical marijuana dispensary at the

property.  (See Exhibit A to Plaintiffs' Amended Complaint which is attached hereto as Exhibit

D2).  On or about February 3, 2021, Plaintiffs submitted an application to the Commonwealth of

Pennsylvania seeking approval to locate the dispensary at the property in question and included

the submission of the zoning approval.  ¶14.

On March 25, 2021, Plaintiffs received approval from the Commonwealth of

Pennsylvania to operate the dispensary at the property.  ¶15.  Plaintiffs assert that in April of

2021, they closed on the sale of property, purchasing the property for $720,000.  (Presumably,

this would be the owner of the property, R&R Yeadon, LLC, which is identified in ¶2 of the Amended Complaint as the record owner of the property).

Plaintiffs then began to renovate the bank building pursuant to a building permit obtained from the Borough of Yeadon.  ¶17.  Plaintiffs assert that the renovation of the building including the initial purchase price and initial operating costs exceed $2,000,000.  ¶18.

On February 2, 2022, Plaintiffs were provided a temporary certificate of occupancy and use and on February 11, 2022, provided a certificate of occupancy and use.  ¶20 and 21. Plaintiffs assert that all of these actions were predicated upon the approval of the zoning as issued by the zoning officer.  ¶22.

Plaintiffs opened its dispensary for business on February 14, 2022.  ¶24.  Prior thereto, on October 1, 2021, an appeal was filed by "Concerned Residents" which included defendant herein, Sharon Council-Harris, related to the use of the property as a medical marijuana dispensary.  ¶25.  At the time, Mr. Council-Harris was not on Borough Council.  She is currently the President of Borough Council.  ¶26.

Plaintiffs assert that the group should have known as early as November 19, 2020 of the proposed use of the property based on public meetings held between that date and August, 2021. ¶29 and 30.

As a result of the appeal filed on behalf of the Concerned Residents including Ms. Council-Harris, the Zoning Hearing Board held a hearing on January 19, 2022.  ¶31.  Restore Wellness did not attend that hearing alleging deficiencies in notice.  ¶32.

Following the hearing, the Zoning Hearing Board (ZHB) issued a determination on February 17, 2022, a copy of which was attached to Plaintiffs' Amended Complaint as Exhibit B, finding that the Plaintiffs were precluded from locating this type of business at the location in

question.  ¶34 and 35.  The ZHB determined that this type of business needed to be in an RC-Regional Commercial district as opposed to its current district, an NC-Neighborhood Commercial district.  ¶35.  Accordingly, Plaintiffs assert that the ZHB took the position that the decision granted the appeal and denied the zoning permit.  ¶38.

Restore Wellness filed a land use appeal with the Court of Common Pleas, No. CV-2022-001843, and the Concerned Residents filed a Notice of Intervention.  ¶37 and 39.  This is the matter now pending before the Court of Common Pleas and remanded back to the ZHB for a hearing by Judge Whelan.  The Borough also became a party to the intervening proceedings and is represented by the same counsel who represents the Concerned Resident, Ms. Council-Harris.  ¶39.

The Amended Complaint identifies the three members of the ZHB as Ricco Keyes, Peter Rykard and Christine Quattro and it appears that they are being sued in their capacity as members of the ZHB.  (See the caption in the Complaint and ¶8-10).

It appears they are asserting that Ms. Council-Harris is being sued in her capacity as the President of Borough Council.  ¶6 and 7.  Shortly after Ms. Council-Harris became President of Borough Council the Borough began participating in this suit.  ¶40.

On August 26, 2022, the Court of Common Pleas conducted an evidentiary hearing with respect to the Plaintiffs' land use appeal and the Intervenors' Motion to Quash the land use appeal.  ¶41.  On August 30, 2022, the Court of Common Pleas remanded the matter to the ZHB to take additional evidence.  ¶42.  This hearing has not yet been convened.  ¶43.

Plaintiffs assert without identification that certain Defendants engaged in making defamatory statements three weeks prior to the issuance of the ZHB decision on February 17, 2022.  ¶47.  Purportedly, a Borough Council member posted in a public forum which is

unidentified in the Amended Complaint that another Borough Council member received kickbacks from "Restored Medical Marijuana" to pay off her mortgage.  ¶48.  On or about October 20, 2022, during a public meeting, President of Borough Council, Sharon Council-Harris, made statements to those in attendance that the Plaintiffs had paid another Borough Council member $60,000.  ¶49.

## III.   COUNTS ASSERTED BY PLAINTIFFS IN THE AMENDED COMPLAINT

As noted above, all eight counts are asserted by both Plaintiffs against all Defendants without further discrimination with respect to the content of each count.  They are as follows:

> Count I – a claim pursuant to the 5th Amendment of the United States Constitution brought pursuant to 42 U.S.C. §1983;

> Count II – a claim under the 14th Amendment of the United States Constitution pursuant to 42 U.S.C. §1983;

> Count III – a claim under 42 U.S.C. §1985;

> Count IV – a declaratory judgment action;

> Count V – a claim for defamation under Pennsylvania law;

> Count VI – a non-monetary claim under the Pennsylvania Constitution, Article 1, Section 10;

> Count VII – a claim for mandamus relief; and

> Count VIII – a claim for interference with business relations.

## IV.   STANDARD OF REVIEW

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. See F.R.Civ.P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." See DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir.2007).  To withstand a

motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."   See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.  Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." See Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir.2009). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' "   Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). In deciding a Rule 12(b)(6) motion, the Court is to limit its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993).

## V.    ARGUMENT

### A.  PLAINTIFFS' CLAIMS FOR PUNTIVE DAMAGES SHOULD BE DISMISSED

Plaintiffs assert claims for punitive damages on all counts and against all Defendants. Precedential case law is clear that municipal entities such as the Borough of Yeadon and the ZHB of Yeadon are immune from punitive damages under both federal and state law.  See City of Newport, et al. v. Fact Concerts, Inc., et al., 453 U.S. 247, 268 (1981), whereby the court

made it clear that punitive damages are not available against municipalities.  The same result follows with respect to the state claims.  Feingold v. SEPTA, 512 Pa. 567, 517 A.2d 1270 (1986) and Marko v. City of Philadelphia, 576 A.2d 1193 (Pa. Cmwlth. 1990).

To the extent that the individual Defendants are being sued in their official capacities as either members of the ZHB or the President of Borough Council, they are also immune from punitive damages as they are indistinguishable from the entity which is being sued.  See Kentucky v. Graham, 473 U.S. 159, 165-166 (1985).  Accordingly, Moving Defendants respectfully request that all claims for punitive damages be dismissed, with prejudice.

**B.  PLAINTIFFS' CLAIMS UNDER THE PENNSYLVANIA CONSTITUTION AS SET FORTH IN COUNT VI MUST BE DISMISSED**

Although Plaintiffs have removed any claim for monetary relief in their claims under the Pennsylvania Constitution as set forth in Count VI of the Amended Complaint, the relief they seek is to ask this Court to void the ZHB decision and reinstate approval of the zoning. Essentially, this is the same relief being sought by the declaratory relief being pursued in Count IV and the mandamus relief being sought in Count VII.  Once again, it must be reiterated that there is no vehicle for Plaintiffs to bring a claim under the Pennsylvania Constitution.  Even though they are not seeking monetary damages under this claim, Pennsylvania does not have a vehicle similar to 42 U.S.C. §1983.  Plaintiffs cannot seek to use the Pennsylvania Constitution where state law providing for declaratory relief and/or mandamus relief fail to provide an avenue through which Plaintiffs can pursue such relief.  Moreover, the matter is pending before the ZHB awaiting a hearing mandated by the Court of Common Pleas and, presumably, the matter may go back before the Court of Common Pleas in Delaware County after the ZHB has rendered another decision.

Moreover, Article I, Section 10 of the Pennsylvania Constitution, states in pertinent part as follows:

> …nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."

At no time had the Borough of Yeadon or any Defendant herein taken any steps to condemn Plaintiffs' property.  Even if such a step had been taken, it would have been taken pursuant to Pennsylvania laws that permit the condemnation of private property for public use.  There is a state statute that provides relief for the Plaintiffs should a condemnation occur.  See, 26 Pa.C.S. §101, et. seq.  Moreover, Plaintiffs cannot establish a de facto taking and Plaintiffs have not been substantially deprived of the use and enjoyment of the property.  (See appeal of Jacobs, 423 A.2d 442 (Pa. Cmwlth. 1980).  Plaintiffs would also have to establish that the municipality has exercised its power of eminent domain and an actual permanent invasion of land amounting to an appropriation has taken place.  See Snap Tite, Inc. v. Millcreek Twp., 811 A.2d 1101 (Pa. Cmwlth. 2002).  In essence, Plaintiffs have not lost the use of their property and this claim is premature.  See Genter v. Blair County Convention and Sports Facilities Authority, 805 A.2d 51 (Pa. Cmwlth. 2002).

Pennsylvania has a state statute that provides for condemnation as well as the rights of the property owner and if an actual taking were to occur, Plaintiffs have such a statute available to pursue their rights and remedies.  See, 26 Pa.C.S. §101, otherwise known as the Eminent Domain Code.  Accordingly, the claims under the Pennsylvania Constitution should be dismissed.

**C. PLAINTIFFS' DEFAMATION CLAIM AS SET FORTH IN COUNT V MUST BE DISMISSED OR LIMITED TO THE ACTUAL DEFENDANT WHO PURPORTEDLY MADE THE STATEMENT**

In the Amended Complaint, Plaintiffs now assert a defamation claim in Count V.  It appears that the claim is based upon statements made by one individual Defendant, Sharon Council-Harris, at a public meeting and apparently another statement put on some unknown public forum.  At no point do the Plaintiffs assert that any of the other individual Defendants herein made any defamatory statements.  Furthermore, neither the Borough of Yeadon nor the ZHB can be liable for an intentional tort under Pennsylvania law.

Defamation is an intentional tort and is governed by statute in Pennsylvania.  See the elements needed to prove defamation.  42 Pa.C.S. §8343.  Plaintiffs have failed to identify any individual Defendant other than Sharon Council-Harris and, accordingly, this claim as to members of the ZHB, Keyes, Rykard, and Quattro, should not have to defend themselves against such a claim.  Moreover, neither the Borough nor the ZHB can be liable for intentional torts.  See Zernehelt v. Lehigh County Office of Children & Youth Services, 659 A.2d 89 (Pa. Cmwlth. 1995).  Moreover, the two local agencies, the Borough and the ZHB, are protected by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541, et seq.  There are nine exceptions to immunity provided by that Act and defamation does not fall within any of the exceptions.  See 42 Pa.C.S. §8542(b), (1)-(9).

Plaintiffs also fail to plead sufficient information to establish the defamation claim especially where the purported defamation took place in a public hearing and the statement was purportedly made by the President of Borough Council.  Under these circumstances, Ms. Council-Harris is entitled to high public official immunity which has a long-standing history in Pennsylvania.  See Matson v. Margiotti, 88 A.2d 892 (Pa. 1952).  Public officials such as

Borough Council members are immune from civil suits for defamatory statements (even if those statements are motivated by malice), provided that the statements are made in the course of the official's duties and made within the scope of the individual's authority and jurisdiction.  Azar v. Ferrari, 898 A.2d 55 (Pa Cmwlth. 2006)(citing Matson)).  The purpose of the high public official immunity is to protect officials from suit, expenses and publicity but also to protect them from the societal interest in allowing "unfettered discharge of public business and in full public knowledge of the facts and conduct of such business".  Absolute immunity is thus a means of removing any inhibition which might deprive the public of the best service by its officers and agencies.  Id. at 59 (citing Montgomery v. City of Philadelphia, 140 A.2d 100, 102 (Pa. 1958).  As noted, this immunity is absolute regardless of any personal or political motivations, malice or even irreparable harm to an individual.  Id. at 59 (citing Osiris Enterprises v. Borough of Whitehall, 877 A.2d 560 (Pa Cmwlth. 2005).  Accordingly, based on the sparse facts pleaded in the Amended Complaint, Borough Council President, Sharon Council-Harris, is entitled to immunity from any defamatory statements purportedly made.

### D. PLAINTIFFS' CANNOT ESTABLISH A VIABLE MANDAMUS CLAIM AGAINST ANY DEFENDANT

It has long been held that the relief sought by writ of mandamus is "an extraordinary writ which lies to compel the performance of a ministerial act or a mandatory duty where there is a clear legal right in the plaintiff, the corresponding duty in the defendant, and a want of any other appropriate and adequate remedy."  Valley Forge Racing Ass'n. v. State Horse Racing Com., 297 A.2d 823, 824-25 (Pa. 1972); citing Philadelphia Presbytery Homes, Inc. v. Abington Board of Commissioners, 269 A.2d 871 (Pa. 1970).  Here, a ministerial act would be the equivalent of issuing a zoning permit where the Court of Common Pleas or the Zoning Hearing Board has upheld plaintiff's zoning and the Zoning Officer refused to issue the permit.  Such is not the case

here as Plaintiffs do not have a clear right to this non-conforming use.  Plaintiffs appropriate and adequate remedy is to seek damages in the event that it is determined that zoning is not appropriate and that permit should not have been issued initially.  The courts have clearly held that the right to performance of a mandatory duty must be well-defined, clear and specific and "where any doubt exists, mandamus relief will not lie."  <u>Kegerise v. Del Grande</u>, 183 A.2d 997, 1004 (Pa. 2018) citing <u>Equitable Gas Co. v. City of Pittsburgh</u>, 507 Pa. 53, 488 A.2d 270, 272-73 (Pa. 1985).  Plaintiffs have no clear statutory right to the relief they are requesting in this case. The Court of Common Pleas has remanded the matter to the ZHB to take additional evidence. The ZHB will either rule in favor of Plaintiffs or against Plaintiffs and Plaintiffs will then have the right to take an appeal of that ruling to the Court of Common Pleas.  In either event, there is no clear right to the relief they request and there is neither a ministerial act nor a mandatory duty on the part of the Defendants at this time.

Accordingly, Plaintiffs request for mandamus relief as set forth in Count VII should be dismissed.

**E.  <u>PLAINTIFFS HAVE FAILED TO PLEAD A CONSPIRACY CLAIM UNDER 42 U.S.C. §1985(3)</u>**

42 U.S.C. §1985 is a post-civil war civil rights statute designed to provide equal protection of the laws to those who have been previously denied same.  Plaintiffs assert a conspiracy claim under §1985(3) without asserting any facts that would establish a conspiracy to begin with let alone a conspiracy based upon discriminatory animus.

It has been held that in order for the Plaintiffs to properly allege and prove such a claim, Plaintiffs must establish the following:

(1) A conspiracy;

  (2) Motivated by a racial or class-based discriminatory animus designed to deprive directly or indirectly, any person or class of persons to the equal protection of the law;

  (3) An act in furtherance of the conspiracy; and

  (4) An injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

Lake v. Arnold, 112 F.3d 682 (3d Cir. 1997) (citations omitted).

  Plaintiffs' Amended Complaint fails to include any allegations of how, why or when the alleged conspiracy came into existence or to specify any of the overt acts that would have been committed in the furtherance of the conspiracy.  B.J. Marchese v. Umstead, 110 F.Supp.2d 361, **at 371** (E.D. Pa. 2000).  Moreover, it has been held that a municipality such as the Borough of Yeadon or the ZHB may not be held liable under a theory of conspiracy under §1985(3) on the basis of respondeat superior.  DiBenedetto v. City of Reading, 1998 WL 474145 (E.D. Pa.) citing Monell v. Dept. of Social Services, 436 U.S. 658 (1978).  Under the Monell theory, a city such as the Borough of Yeadon or the ZHB can only be held liable when it takes action pursuant to an established policy, practice or custom.  Frazier v. City of Philadelphia, 927 F.Supp. 881, 887 (E.D. Pa. 1996).

  Not only does Plaintiffs' Amended Complaint fail to establish the necessary elements of a conspiracy claim but it clearly fails to establish that there is any "class-based discriminatory animus".  The U.S Supreme Court strictly construed the requirement of class-based and invidious animus in United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott, 463 U.S. 825 (1983), Id. 834.

  Here, Plaintiffs not only fail to plead a conspiracy but fail to establish that it is class-based discriminatory animus or designed to violate equal protection rights of the Plaintiffs if, in fact, they could be considered a cognizable class.

Accordingly, Plaintiffs' Amended Complaint completely fails to establish a claim under 42 U.S.C. §1985(3) and Count IV should be dismissed, with prejudice.

### F.  PLAINTIFFS' CONSITUTIONAL CLAIMS ARE NOT RIPE

Plaintiffs assert claims in Count I for a 5th Amendment taking and in Count II for a due process violation under the 14th Amendment.  Neither of these claims are ripe at this time. Plaintiffs have suffered no taking and while they are still litigating their matter before the ZHB in the Court of Common Pleas they have suffered no due process violation.

Plaintiffs will likely cite the United States Supreme Court case of Knick v. Township of Scott, 139 S.C. 2162 (2019).  The Knick case overruled prior precedent set by the court in Williamson County Regional Planning Commission. v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985).

In overturning Williamson, the court did not do away with the taking requirement of the 5th Amendment.  Williamson essentially provided that an exhaustion of remedies had to take place at the state level before one could file a lawsuit in federal court under the 5th Amendment taking clause.  The Supreme Court found that was untenable as such a claim could be precluded if the state court found against a litigant.  However, the Supreme Court did not eradicate the need for a taking.

The court stated as follows:

> We now conclude that the state litigation requirement imposes an unjustifiable burden on takings plaintiffs, conflicts with the rest of our takings jurisprudence, and must be overruled.  A property owner has an actionable 5th Amendment takings claim when the government takes his property without paying for it.  That does not mean that the government must provide compensation in advance of a taking or risk having its action invalidated: so long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities.  But it does mean that the property owner has suffered a violation of its 5th Amendment rights when the government takes

> his property without just compensation, and therefore may bring his claim
> in federal court under §1983 at that time.

Knick at 2167-2168.  Here, Plaintiffs have not suffered any taking.  The matter is pending before

the ZHB on remand from the Court of Common Pleas with respect to a zoning permit.  The

property of the Plaintiffs has not been taken nor has there been any suggestion that it could be

taken.  At worst, Plaintiffs' property cannot be used for the purpose for which the Plaintiffs seek

to utilize it, however, there is still no taking at this time.  Plaintiffs may well prevail before the

ZHB and/or before the Court of Common Pleas.  This is entirely different from the matter before

the U.S. Supreme Court in Knick where an ordinance was passed which would have constituted

a taking a portion of the plaintiff's property.  In fact, in the Knick case the Supreme Court did

not address that particular issue as it was addressed in Williamson County where the Supreme

Court, at that time, held that the matter was not ripe for two reasons and one of which was that

the developer in that case still had an opportunity to seek a variance from the Appeals Board so

the taking was not final.  Id. 2169.  The court noted that "Knick does not question the validity of

this finality requirement, which is not at issue here".  Id. 2169.  Accordingly, the court did not

address the ripeness issue at that standpoint because Knick had already suffered a taking with the

adoption of the ordinance.

For these reasons, Plaintiffs' constitutional claims whether for a taking under the 5th

Amendment or a due process violation under the 14th Amendment are not ripe for determination.

Accordingly, Counts I and II should be dismissed, without prejudice.

## G. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiffs have sued the President of Borough Council, Sharon Council-Harris. Ms. Council-Harris apparently began to appeal the issuance of the zoning permit before she was a member of Council as pleaded by Plaintiffs. Accordingly, at that time she was not a state actor.

The Plaintiffs also brought suit against the three Zoning Hearing Board members, Keyes, Rykard and Quattro. Apparently, the reasoning is that these three members of the ZHB in reaching their decision which was contrary to the position taken by the Plaintiffs violated Plaintiffs' constitutional rights.

Noting as set forth above that the Defendants believe that Plaintiffs' constitutional rights have not been violated and/or such rights are not ripe at this time, these four individual Defendants are certainly entitled to qualified immunity under the circumstances pleaded by the Plaintiffs. The three members of the ZHB conducted a hearing and will conduct a future hearing on the issues raised by Plaintiffs. Ms. Council-Harris apparently initiated this process as a private citizen. Certainly, as Council President she is one of seven votes and has no authority by herself to take any action.

The United States Supreme Court has held that qualified immunity serves to "insulate government officials from liability for assumable damages when the discretionary conduct of that official did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The standard for applying qualified immunity is an objective one. The Supreme Court has instructed that the inquiry must focus on the "objective reasonableness of an official's conduct as measured by reference to clearly establish law". Id.

The Court has further explained, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say official action is protected by qualified immunity unless the very action in question has been declared unlawful, but it is to say that the unlawfulness must be apparent."   Anderson v. Creighton, 483 U.S. 635 (1982).

Qualified immunity is an immunity from suit, and not a mere defense to liability.  As a general rule, the issue of whether an official is entitled to qualified immunity should be determined prior to trial, as the purpose of qualified immunity is to protect officials and public employees from undergoing the burdens of litigation.  Mitchell v. Forsythe, 472 U.S. 511 (1985).

In Hunter v. Bryant, 112 S.C. 534 (1991), the Court recognized that "the qualified immunity standard gives ample room for mistakes of judgment in protecting all but the plainly incompetent or those who knowingly violate the law.  This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." Id. at 137.  The question of whether an official is entitled to qualified immunity is not limited solely to determining whether the official violated clearly established law.  The United States Supreme Court has repeatedly instructed that an official can be entitled to qualified immunity if that official violated clearly established law, but the violation was "objectively reasonable" based upon the information in his possession at the time of the conduct of which Plaintiff complains."

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court explained why a Court should conduct an additional level of analysis in determining whether an officer is entitled to qualified immunity as follows:

> The concern of the immunity inquiry is to acknowledge that
> reasonable mistakes can be made as to the legal constraints on

> particular police conduct. It is sometimes difficult for an
> officer to determine who the relevant legal doctrine, will apply
> to the factual situation the officer confronts. An officer might
> correctly perceive all of the relevant facts, but have a mistaken
> understanding as to whether a particular (action) is legal in those
> circumstances. If the officer's mistake as to what the law requires
> is reasonable, however, the officer's entitled to the qualified
> immunity defense.

Saucier at 205. Moreover, the Supreme Court has held that the two-step procedure

outlined in Saucier is no longer mandatory. The Court has stated:

> When reconsidering the procedure required in Saucier, we conclude
> that, while the sequence set forth there is often appropriate, it should
> no longer be regarded as mandatory. The Judges of the District Courts
> and the Courts of Appeal should be permitted to exercise their sound
> discretion in deciding which of the two prongs of the qualified
> circumstances in the particular case at hand.

Pearson v. Callahan, 555 U.S. 223 (2009).

As the Supreme Court instructs, "the relevant, dispositive inquiry in determining whether

a right is clearly established, is whether it would be clear to a reasonable officer that his conduct

was unlawful in the situation he confronted." Id. 202. Moreover, the protection of qualified

immunity applies regardless of whether the government official error is a mistake of law, a

mistake of fact, or a mistake based on mixed questions of law and fact. Groh v. Romirez, 540

U.S. 551, 556 (2004).

In Ziglar v. Abbasi, 137 S.C. 1843 (2017), the U.S. Supreme Court granted qualified

immunity to individual defendants who were being sued under several theories including 42

U.S.C. §1985(3). The plaintiffs were individuals who had been imprisoned and then deported

following the terrorist attack of September 11, 2001. In particular, the court found qualified

immunity would apply to the conspiracy claims finding that no unlawful conspiracy exists when

officers within a single corporate entity consult among themselves and adopt a policy for the

17

entity.  Id. 1867, citing Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769-71 (1984).  The court went on to note that a conspiracy requires, in particular, an agreement to do an unlawful act and that when two agents of the same entity make an agreement in the course of their official duties, as a practical and legal matter, their acts are necessarily attributed to their principle.  It then follows that there can not be an agreement between two or more separate people under the circumstances.  Id. 1867, citing Copperweld at 771.

The same rules must apply in this case, certainly as to the three members of the ZHB, as they are attempting to reach an agreement on an issue and are acting in a quasi-judicial capacity to do so.  As the court went on to note in Ziglar, officials employed by the same governmental department do not conspire when they speak to one another and work together in their official capacities.  Id. 1868.  Hence, the court granted qualified immunity to those officers.  The same is true here where we have three members of the ZHB hearing a matter before them and reaching a conclusion.

As to Ms. Council-Harris, she began this quest as a private citizen and the mere fact that she was subsequently elected to Council does not make her a state actor as it applies to this case especially where she is only one vote on a seven-member Council which requires a majority vote to pursue any type of litigation or legislative matter.

Accordingly, the four individual Defendants should be granted qualified immunity from Plaintiffs' constitutional claims.

**H.** **THE MEMBERS OF ZHB, KEYES, RYKARD AND QUATTRO, ARE ENTITLED TO QUASI JUDICIAL IMMUNITY FOR THE CLAIMS BROUGHT FORTH BY THE PLAINTIFFS**

Plaintiffs' Amended Complaint makes it clear that the three ZHB members which were sued were sued in their capacity as members of the ZHB who adjudicated a case brought before them by a protestant with regard to a zoning issue.  The courts of this Commonwealth as well as the federal courts have long held that those employed in the judicial process by way of administrative agencies are entitled to the same immunities that are enjoyed by judges and prosecutors.

In Re: Petition of Dwyer, 486 Pa. 585, 406 A..2d 1355 (Pa 1979), the Pennsylvania Supreme Court made it clear that members of certain boards are entitled to quasi judicial immunity when they are performing certain adjudicatory functions within an administrative agency which is comparable to that of a judge.  The court, followed the U.S. Supreme Court in Butz v. Economou, 438 U.S. 478 (1978), where the U.S. Supreme Court held that the personal immunity of various federal officials in the executive branch from claims for damages arising from their alleged violations of citizens' constitutional rights could not be pursued.  The U.S. Supreme Court held that those officials performing adjudicatory functions which include holding hearings, issuing subpoenas and ruling on evidence in order to make or render a decision were entitled to immunity.  Id. 512-513.  The court found that this was necessary to ensure that an agency of a adjudicatory decision would be rendered independently, free from external pressures, harassment or intimidation.  Id. *593.  The Pennsylvania Supreme Court noted, it was adopting the principal annunciated in Butz for agency officials.  Accordingly, in Dwyer, members of the Industrial Board and Building Advisory Board were granted immunity as their powers were judicial in nature since they could hold hearings, issue subpoenas and administer oaths.  Id. *594.

The court went on to note, again following federal law, that this immunity is wide ranging.  In Stump v. Sparkman, 435 U.S. 349 (1978), the Supreme Court of the United States held that "a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"  Id. at 356-357, citing Bradley v. Fisher, 13 Wall, 335, 80 U.S. 335, 20 L.Ed. 646 (1871).

In the Commonwealth of Pennsylvania, quasi judicial immunity has been extended to the Prothonotaries (Brown v. Dreibelbis, 2019 Pa. Cmwlth, unpub., Lexis 448; 216 A.2d 1232 (Pa Cmwlth. 2019); unemployment compensation authorities (Beck v. Krell, 2000 Pa Dist. & Cnty. Dec. Lexis 160; 47 Pa. DNC 4th 163 (2000); worker's compensation referees, Myers v. Commonwealth, Department of Labor & Industry, 458 A.2d 235 (Pa Super. 1983); and horse racing commission members, Tulio v. Commonwealth, State Horse Racing Com., 470 A.2d 645 (Pa. Cmwlth. 1984).  Here, there is no allegation in Plaintiffs' Amended Complaint that establishes that any of the three members of the ZHB acted outside of their adjudicatory functions.  In essence, Plaintiffs simply allege that they erred when revoking the zoning permit. That is not actionable conduct and these three members should be granted immunity from all of Plaintiffs' claims.

## I. PLAINTIFFS CANNOT MEET THE STANDARD FOR A DUE PROCESS CLAIM

When presenting a due process claim for a land development issue there are two possible avenues that Plaintiffs can pursue.  The first is a procedural due process claim.  Here, it is clear that the Pennsylvania Municipalities Planning Code, 53 P.S. §10101, et seq., establishes the process through which an individual may challenge any decision of a municipality or its ZHB. This includes an appeal to the Court of Common Pleas.  This was followed by Plaintiffs in this

case and the court has remanded the matter back to the ZHB to take additional evidence. Accordingly, it is clear that Plaintiffs are not presenting any procedural due process claim here.

If Plaintiffs are presenting a substantive due process claim, they must establish conscience shocking conduct on the part of the municipal officials.  In U.A. Theatre Circuit v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003), the court made it clear that a 14th Amendment substantive due process claim must meet the shocks the conscience standard set forth by the Supreme Court in County of Sacramento v. Lewis, 523 U.S. 833 (1998).  As the court noted, the application of this standard also prevents the court from being "cast in the role of a zoning board of appeals."  Id. 402 citing Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir. 1982) quoting Village of Belle Terre v. Boraas, 416 U.S. 1, 13 (1974).

See also Eichenlaub v. Township of Indiana, 385 F.3d 274 (3d Cir. 2004), where the court noted that applying this standard avoids converting "federal courts into super zoning tribunals"… noting that the standard of shocks the conscience applies only to "the most egregious official conduct."  Id. 285 citing Lewis at 846.

In Giuliani v. Springfield Township, 238 F.Supp.3d 670 (E.D. Pa. 2017), Judge O'Neill addressed this standard in a land use case noting that following the Eichenlaub decision the courts have remained hesitant to find conscience shocking behavior in the land use context absent a showing that the conduct was either permeated with self-dealing or corruption.  Id. 696 citing Skiles v. City of Reading, 449 F.App'x. 153, 158 (3d Cir. 2011).

Here, Plaintiffs' allegations do not come close to meeting the shock the conscience standard.  We have a private citizen, Ms. Council-Harris, who requested a ZHB hearing on the issuance of this permit.  The hearing took place and the ZHB determined that the business was not in the proper zoning district.  Plaintiffs took an appeal to the Court of Common Pleas which

remanded the matter for additional evidence.  That hearing has not taken place yet, however, it is likely to happen within the next thirty days.  In either event, Plaintiffs have due process rights and absent some evidence as Judge O'Neill suggested, of self-dealing or corruption, there can be no substantive due process claim presented under these facts.  Accordingly, Count II should be dismissed.

### J.  PLAINTIFFS ARE NOT ENTITLED TO DECLARATORY RELIEF

Declaratory relief should only be provided to a party where they have a clear entitlement to such relief.  One of the exceptions under the Declaratory Judgments Act (DJA), 42 Pa.C.S. §7531-7541, prohibits any declaratory relief under the current circumstances.  In 42 Pa.C.S. §7541(c), declaratory relief is not available where (2) proceeding within the exclusive jurisdiction of a tribunal other than a court and (3) proceeding involving an appeal from an Order of a tribunal.

With the current matter pending before the ZHB on a remand from the Court of Common Pleas, this Court should refrain from entertaining any declaratory judgment relief which, in itself, would place this court in the position of a "super zoning board".

### K. DEFENDANTS ARE ENTITLED TO A MORE DEFINITE STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(e)

Plaintiffs' Amended Complaint contains eight counts, however, not a single count is directed to one or more Defendants but, instead, all counts are directed to all Defendants.  This essentially puts the Defendants into the position of guessing which claims are being made against which Defendants.  For instance, the defamation claim only identifies comments made by one defendant, Sharon Council-Harris.  Similarly, the other constitutional claims and state law claims are asserted against all individuals and entities regardless of controlling law or the conduct of the entities or individuals.

Under Rule 12(e), a party may move for a more definite statement to which a "responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Here, all of the Defendants are entitled to know precisely which counts are directed to them in order to be prepared to appropriately defend these claims.

Accordingly, Moving Defendants request that the Plaintiffs identify which claims are asserted against which Defendants in this matter.

## VI.    **CONCLUSION**

For the reasons stated herein, Moving Defendants respectfully request that Plaintiffs' Complaint be dismissed. In the alternative, Moving Defendants respectfully request that the Court granted immunity to the individual Defendants and/or require that Plaintiffs identify which Defendants are the targets of which counts.

<div style="margin-left:40%;">

Respectfully submitted,
**HOLSTEN ASSOCIATES, P.C.**


**RPD2724** _____
**ROBERT P. DiDOMENICIS, ESQUIRE**
**Attorney ID No. 30482**
**115 N. Jackson Street**
**Media, PA  19063**
**(610) 566-7583**
**rdidomenicis@holstenassoc.com**
**Attorney for Defendants**

</div>

<u>**CERTIFICATE OF SERVICE**</u>

I, Robert P. DiDomenicis, Esquire, counsel for Defendants, state that a true and correct copy of the within Defendants' Motion for Dismissal of Plaintiffs' Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and a More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e) and Memorandum of Law were served upon the following individuals via ECF, email or U.S. Mail, postage prepaid, this 10th day of November, 2022.

Edward J. Greene, Esquire
John A. Jaros, Esquire
Riley, Riper, Hollin and Colagreco
717 Constitution Drive
P.O. Box 1265
Exton, PA  19341

**HOLSTEN ASSOCIATES, P.C.**

**RPD2724**
**ROBERT P. DiDOMENICIS, ESQUIRE**
**Attorney ID No. 30482**
**115 N. Jackson Street**
**Media, PA  19063**
**(610) 566-7583**
**rdidomenicis@holstenassoc.com**
**Attorney for Defendants**

# D1

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **RESTORE INTEGRATIVE WELLNESS** | : | No.  **2022-001843** |
| **CENTER, LCC and R&R YEADON, LLC** | : | |
| | : | |
| v. | : | |
| | : | |
| **ZONING HEARING BOARD OF THE** | : | |
| **BOROUGH OF YEADON** | : | |
| | : | |
| and | : | |
| | : | |
| **THE BOROUGH OF YEADON** | : | |

## ORDER

    **AND NOW,** this 30th day of August, 2022, upon consideration of Appellant Restore

Integrative Wellness Center and R&R Yeadon LLC (hereinafter "Restore Wellness")'s Motion

to Present Additional Evidence, and all responses thereto, and after a hearing held before this

court on August 26, 2022, it is hereby **ORDERED** and **DECREED** that this matter is remanded

to the Zoning Hearing Board of the Borough of Yeadon for an additional hearing in accordance

with Pennsylvania Municipalities Planning Code and the Borough of Yeadon's ordinances at

which time Appellant Restore Wellness may supplement the record and introduce evidence. All

counsel of record shall receive notice of the date, time, and place of the hearing, which shall be

scheduled within 60 days of the date of this Order. Other parties may have an opportunity to

respond and further supplement the record at said hearing.

 

 

                                      BY THE COURT:

                                       _____

                                     JOHN J. WHELAN, J.

# D2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RESTORE INTEGRATIVE | : | Case No. 22-02888 |
| WELLNESS CENTER, LLC, et al. | : | |
| Plaintiffs | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| BOROUGH OF YEADON, et al. | : | |
| Defendants | : | |

## **AMENDED COMPLAINT**

Plaintiffs, Restore Integrative Wellness Center, LLC and R&R Yeadon, LLC (collectively, "Restore Wellness" or "Plaintiffs"), by and through their attorneys, Riley Riper Hollin & Colagreco, hereby files this Amended Complaint addressing action taken by the Zoning Hearing Board of the Borough of Yeadon ("Borough"), Delaware County, Pennsylvania ("Zoning Hearing Board"), and other municipal representatives, which purports to revoke, without the proper, required notice to Plaintiffs, a zoning use approval issued to Plaintiffs fifteen months earlier and after Plaintiffs had already begun lawfully operating in the Borough pursuant to the Borough's zoning use approval.

As of the time of the purported revocation, the Plaintiffs had expended in excess of $2,000,000 in renovation and fit-out costs consistent with the zoning use approval. Additionally, the Plaintiffs had obtained from the Borough building and occupancy permits to renovate and convert the former bank located on the subject property to a medical marijuana dispensary facility. The Plaintiffs secured a zoning use approval on November 24, 2020, a building permit on June 16, 2021, and a final certificate of occupancy on February 11, 2022. Thereafter the Plaintiffs began operating consistent with the zoning use approval.

On October 1, 2021, nearly a year after the zoning use approval was issued on November 24, 2020, certain unidentified "concerned" residents, and the now Yeadon Borough Council President, Sharon Council-Harris, then as a private citizen, filed an appeal, challenging the Plaintiffs zoning use approval and use of the property as a medical marijuana dispensary facility.

The Borough, Zoning Hearing Board and certain municipal representatives abused their discretion, deprived the Plaintiffs of their rights under the United States and Pennsylvania Constitutions and otherwise acted in bad faith in granting the untimely appeal and in purporting to revoke the Plaintiffs' zoning use approval. Among other things, Defendants' actions constitute a taking of Plaintiffs' property without just compensation, in violation of the Fifth Amendment of the United States Constitution, which compensation may exceed $2 million.

In support hereof, Restore Wellness avers as follows:

## GENERAL BACKGROUND

1. Plaintiff, Restore Integrative Wellness Center is the owner and operator of several medical marijuana dispensaries in the Commonwealth of Pennsylvania, one of which is located in the Borough of Yeadon at 735 Church Lane, Yeadon, Pennsylvania, 19050, more specifically identified as UPI No. 48-00-00824-00 (the "Property").

2. Plaintiff, R&R Yeadon, LLC is the record owner of the Property and is an affiliated entity of Restore Integrative Wellness Center.

3. Defendant Borough of Yeadon (hereinafter "the Borough") is a municipality governed by the laws of the Commonwealth of Pennsylvania that maintains administrative offices at 600 Church Lane, Yeadon, Pennsylvania 19050.

4.     The Borough is administrated by a Borough Council, which supervises Borough operations, as well as appointing officials to run the affairs of the Borough, including members of various municipal boards, such as the Zoning Hearing Board of the Borough of Yeadon.

5.     Defendant Zoning Hearing Board of the Borough of Yeadon, is a quasi-judicial body of the Borough of Yeadon that maintains administrative offices at 600 Church Lane, Yeadon, Pennsylvania 19050.

6.     Defendant Sharon Council-Harris is the Council President for the Borough of

7.     Yeadon, with an address at 600 Church Lane, Yeadon, Pennsylvania 19050.

8.     Defendant Ricco Keyes is a Member of the Zoning Hearing Board of the Borough of Yeadon, with an address at 600 Church Lane, Yeadon, Pennsylvania 19050.

9.     Defendant Peter Rykard is a Member of the Zoning Hearing Board of the Borough of Yeadon, with an address at 600 Church Lane, Yeadon, Pennsylvania 19050.

10.     Defendant Christine Quattro is a Member of the Zoning Hearing Board of the Borough of Yeadon, with an address at 600 Church Lane, Yeadon, Pennsylvania 19050.

11.     On August 21, 2020 Plaintiffs sent a letter to Rufus Stokes, Zoning Officer for the Borough of Yeadon ("Zoning Officer") expressing an interest in opening a medical marijuana dispensary at the Property.

12.     On September 8, 2020 Plaintiffs entered into an agreement of sale for the property, a former Citizens Bank, contingent upon receipt of zoning approvals from the Borough and additional regulatory approvals from the Pennsylvania Department of Health.

13.     On November 24, 2020, after a three month interactive process with Borough officials, the Zoning Officer provided Plaintiffs with written formal zoning approval to operate a

medical marijuana dispensary at the Property ("Zoning Approval").  A copy of the Zoning Approval is attached hereto as Exhibit "A".

14.     On February 3, 2021 Plaintiffs, in compliance with Pennsylvania Department of Health regulations,  submitted a formal application to the Department seeking approval to locate a medical marijuana dispensary at the Property, which application included the submission of the Zoning Approval for the Department's consideration.

15.     On March 25, 2021 Plaintiffs received approval from the Pennsylvania Department of Health to operate a medical marijuana dispensary at the Property.

16.     In or about April 2021, Plaintiffs closed on the sale of the Property, purchasing the Property for $720,000.

17.     Immediately thereafter, Plaintiffs began renovation of the former bank building on the Property as a medical marijuana facility, working with the Borough on all permitting, including the issuance of Building Permit number 21-0287 on June 16, 2021 for which Plaintiffs paid $15,134.50 to the Borough of Yeadon.

18.     Renovation of the building and initial operating costs exceeded $2 million, including a complete overhaul of all operating systems, installation of state mandated sophisticated security systems, and interior and exterior finishes which turned the Property into a state-of-the-art medical marijuana dispensary facility.

19.     In December 2021 the Borough allowed Plaintiffs to use the Borough Hall for Plaintiffs' job fair at which Plaintiffs hired 30 Borough residents who went on to complete job training and are now employed by Plaintiffs.

20.     On February 2, 2022 Plaintiffs were provided a Temporary Certificate of Occupancy and Use, Permit Number 2021-519, for the Property by the Borough of Yeadon.

21.     On February 11, 2022 Plaintiffs were provided a Certificate of Occupancy and Use, Permit Number 2021-519, for the Property by the Borough of Yeadon.

22.     Each and every action taken by the Plaintiffs to open the medical marijuana dispensary at the Property at a cost of millions of dollars was predicated upon the Zoning Approval issued by the Zoning Officer.

23.     Restore Wellness diligently secured all applicable zoning, building and occupancy permits from the Borough of Yeadon that were necessary to renovate and convert the former bank located on the Property to a medical marijuana dispensary facility, which was deemed a lawful and permitted use for the Property by the Zoning Officer.

24.     Plaintiffs opened its medical marijuana dispensary for business on February 14, 2022.

25.     Prior to Plaintiffs' opening, on October 1, 2021, approximately ten months after the issuance of the Zoning Approval, an appeal was filed by unidentified "concerned residents" of the Borough along with then private citizen and now current Borough of Yeadon Council President, Sharon Council-Harris ("Council-Harris Appeal") related to the use of the Property as a medical marijuana dispensary.

26.     Carl W. Ewald, Esquire was the attorney retained to represent the "concerned residents" as well as the now current Borough of Council President Sharon Council-Harris.

27.     The Pennsylvania Municipalities Planning Code (MPC) requires that an appeal from a municipal officer's approval of a development be filed with thirty (30) days of the approval, unless the appellant "proves he had no notice, knowledge, or reason to believe that such approval had been given."  *See* MPC § 914.1(a) (emphasis added).

28.    The Council-Harris Appeal was the first and only appeal filed from any of the Borough approvals and permits received by Restore Wellness.

29.    Public record documents establish that the group, which is led by the Borough's current Council President, knew or should have known about Restore Wellness's proposed use of the Property as early as **November 19, 2020**, based on publicly available information about the project and public meetings where the project was discussed by members of the public and Borough officials.

30.    Specifically, there was discussion about Restore Wellness's proposed medical marijuana facility at the following public meetings, all of which were, (and currently are), available for the public to view virtually:

(a)    November 19, 2020 - Borough Council Legislative Meeting (which was open to the public).  Restore Wellness's proposed medical marijuana facility was discussed as an "Action Item" in "The Code Report" provided by Code Department Councilor Liana Roadcloud.  The minutes from that meeting specifically note that "The Mayor, [Rufus] Stokes, Solicitor, and Council" discussed the proposed medical marijuana facility.

(b)    December 10, 2020 – During a Borough Council Caucus meeting, there was a discussion about the "future medical marijuana facility" planned for the Property at its public meeting.  Notably, this meeting was held within thirty (30) days of Zoning Approval being issued by Rufus Stokes on November 24, 2020.

(c)    August 19, 2021 – During a Borough Council Legislative Meeting, it was announced that there would be a "Mayor's Forum" on September 2, 2021 to discuss Restore Wellness's planned use of the Property because of "some complaints or concerns

from the neighbors . . . about the proposed marijuana dispensary proposed for the Old Citizen's Bank site." (Council caucus meeting video August 19, 2021, 06:40 – 06:56).  Notably, Rufus Stokes, the Code Director and Zoning Officer of the Borough, made clear that Zoning Approval had already been issued to Restore Wellness and that renovations to the facility were significantly underway.

31.   The Zoning Hearing Board held a hearing on the Council-Harris Appeal on January 19, 2022 (the "Hearing") relating to Plaintiffs' Property.

32.   Due to procedural deficiencies and lack of notice, Restore Wellness did not attend nor participate in the Hearing.

33.   Specifically, contrary to due process, the MPC and Borough Ordinance, Plaintiffs were never provided required notice of the hearing.

34.   Following the Hearing, the Zoning Hearing Board issued a determination on February 17, 2022 by way of an undated writing entitled "Memorandum, Findings, Conclusions and Order" (the "Decision").  A copy of the Decision is attached hereto as Exhibit "B".

35.   In the Decision, the Zoning Hearing Board failed to directly address the previously issued Zoning Approval, building permit, and certificates of occupancy, but concluded as follows,

> "Because Restore is not a business office, an agency or studio and cannot avail itself of a conditional use it is precluded from being located in the NC Neighborhood Commercial District.
>
> Restore's market is beyond the Borough and it is heavily advertising in a manner which his designed to draw business from a broader region than Yeadon's NC-Neighborhood Commercial District.  If the Borough Council were to approve Restore's presence within the Borough it would be appropriate and allowable in the RC-Regional Commercial District."

36.   No Order accompanied the Decision.

7

37.     On March 16, 2022 the Plaintiffs filed an appeal of the Decision to the Delaware County Court of Common Pleas at docket number CV-2022-001843.

38.     The Zoning Hearing Board has taken the position that the Decision "grant[ed] the appeal and den[ied] the zoning permit (sic)".[1]

39.     On April 4, 2022 Carl W. Ewald, Esquire, counsel for the "concerned citizens" of the Council-Harris Appeal, filed a Notice of Intervention in Restore's Land Use Appeal on behalf of the Borough.

40.     The Borough, which had previously chosen not to participate in this matter and had even issued Restore its permit, has taken over the burden of pursing the Council-Harris Appeal.  The Borough also hired Ms. Council-Harris' attorney, Carl Ewald, Esquire.  This about-face from the Borough occurred shortly after Ms. Council-Harris took office as Council President on January 3, 2022.

41.     On August 26, 2022 the Delaware County Court of Common Pleas conducted an evidentiary hearing Plaintiffs' Land Use Appeal as well as Intervenor, Borough of Yeadon's Motion to Quash Land Use Appeal.

42.     Thereafter, on August 30, 2022 the Delaware County Court of Common Pleas remanded the matter to the Zoning Hearing Board for the purpose of taking additional evidence.

43.     The hearing in furtherance of the order of the Delaware County Court of Common Pleas has not yet been convened.

44.     The Defendants themselves have expressed, and continue to express, a commitment to deny the zoning permit.

---

[1] See paragraph 10 of Intervenor, Borough of Yeadon's, Motion to Quash Land Use Appeal filed in the Delaware County Court of Common Pleas.

1475476.1

45.     Allowing the Defendants to "deny the zoning permit" some fifteen months after the Zoning Approval and after the expenditure of millions of dollars in reliance on the Zoning Approval eviscerates Plaintiffs', and all citizens', fundamental right to rely upon the finality of governmental actions.

46.     The parties, claims, and remedies involved in the Land Use Appeal pending in the Delaware County Court of Common Pleas are different than the parties, claims and remedies involved in the instant action.

47.     During the course of the above described proceedings, including at a time just three weeks prior to the Decision on February 17, 2022, certain of the Defendants engaged in a course of conduct which was malicious, defamatory and unduly prejudicial to the Plaintiffs.

48.     For example, one of the Borough Council Board Members posted in a public forum that fellow Board Member LaToya Monroe "got kickbacks from Restore Medical Marijuana to pay-off your $60,000 foreclosure home".

49.     As recently as October 20, 2022, during a public meeting, Defendant Sharon Council-Harris repeatedly advised those in attendance that Plaintiffs had paid to Ms. Monroe $60,000.

50.     These false and malicious public accusations regarding payment of a bribe were made in a concerted effort to deny Plaintiffs their property rights without due process and equal protection of the laws.

### COUNT ONE
### Claim Against Defendants for Violation of Plaintiffs' Constitutionally Protected Rights Pursuant to the Fifth Amendment Under 42 U.S.C. §1983

51.     Paragraphs 1 through 50 are incorporated by reference as if fully set forth herein.

52.     The denial of the Zoning Approval fifteen months after its grant and issuance, and after the Plaintiffs' investment of significant time and financial resources in reliance upon the Zoning Approval, so as to now deny Plaintiffs use of the Property, constitutes a taking of a protected property right.

53.     The Fifth Amendment to the United States Constitution provides that no person shall be deprived of property without due process of law and without just compensation.

54.     The actions of Defendants, individually and collectively, as above described, constitute an unlawful taking of private property, without due process of law and without just compensation in violation of the Plaintiffs' constitutional rights pursuant to the Fifth Amendment of the United States Constitution.

55.     Section 1983 of Title 42 of the United States Code provides, in pertinent part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the district of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…."

56.     Plaintiffs assert their private right of action against the Defendant governmental unit and the individual defendant representatives pursuant to their right of action under Section 1983 of Title 42 of the United States Code.

57.     Plaintiffs have sustained substantial damages as a direct result of the Decision, including but not limited to the loss of value of Plaintiffs' Property, current and future profits and good will, as well as the value of Plaintiffs' time and resources.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor:

(a) Awarding economic damages;

(b)  Awarding compensatory damages;

(c)  Awarding punitive damages;

(d)  Awarding attorney's fees and costs associated with this action; and

(e)  Granting such other relief as the Court deems just and proper.

<div align="center">

**COUNT TWO**

**Claim Against Defendants for Violation of Plaintiffs' Constitutionally Protected Rights Pursuant to the Fourteenth Amendment Under 42 U.S.C. §1983**

</div>

58.     Paragraphs 1 through 57 are incorporated by reference as if fully set forth herein.

59.     The denial of the Zoning Approval fifteen months after its grant and issuance, and after the Plaintiffs' investment of significant time and financial resources in reliance upon the Zoning Approval, so as to now deny Plaintiffs use of the Property constitutes an unlawful action of a state governmental unit and its representatives depriving the Plaintiffs of property rights without due process of law.

60.     The Fourteenth Amendment, Section One to the United States Constitution provides that no State shall deprive any person of property without due process of law nor deny any person within its jurisdiction with equal protection of the laws.

61.     The actions of the Defendants, individually and collectively, as above described, constitute an unlawful action of a state governmental unit and its representatives, depriving the Plaintiffs of certain property rights without due process of law and denying the Plaintiffs equal protection under the laws within the jurisdiction of the Borough of Yeadon, Delaware County, Pennsylvania.

62.     Section 1983 of Title 42 of the United States Code provides, in pertinent part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the district of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

<div align="center">11</div>

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law….”

63.     Plaintiffs assert their private right of action against the Defendant governmental unit and the individual defendant representatives pursuant to their right of action under Section 1983 of Title 42 of the United States Code.

64.     Plaintiffs have sustained substantial damages as a direct result of the Decision, including but not limited to the loss of value of Plaintiffs' Property, current and future profits and good will, as well as the value of Plaintiffs' time and resources.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor:

(a)  Awarding economic damages;

(b)  Awarding compensatory damages;

(c)  Awarding punitive damages;

(d)  Awarding attorney's fees and costs associated with this action; and

(e)  Granting such other relief as the Court deems just and proper.

## <u>COUNT THREE</u>
## <u>Claim Against Defendants Pursuant to 42 U.S.C. §1985</u>

65.     Paragraphs 1 through 64 are incorporated by reference as if fully set forth herein.

66.     Section 1985 of Title 42 of the United States Code provides, in pertinent part,

“If two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;…in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and

12

> exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

67.     The actions of the Defendants, as above described, including making materially false and defamatory statements in a public form, including accusations of criminal conduct, constitute a conspiracy to interfere with the civil rights of the Plaintiffs, thereby supporting a private right of action under Section 1985 of Title 42 of the United States Code.

68.     Plaintiffs have sustained substantial damages as a direct result of the Decision, including but not limited to the loss of value of Plaintiffs' Property, current and future profits and good will, as well as the value of Plaintiffs' time and resources.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor:

(a)  Awarding economic damages;

(b)  Awarding compensatory damages;

(c)  Awarding punitive damages;

(d)  Awarding attorney's fees and costs associated with this action; and

(e)  Granting such other relief as the Court deems just and proper.

## COUNT FOUR
## Claim Against Defendants Pursuant to the Declaratory Judgment Act

69.     Paragraphs 1 through 68 are incorporated by reference as if fully set forth herein.

70.     The Plaintiffs request a declaration of rights with respect to the controversy. Without such a declaration, Plaintiffs will be uncertain of their rights and responsibilities under the law.

71.     The Plaintiffs assert that the Decision is violative of the Constitutions of the United States and the Commonwealth of Pennsylvania.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor declaring:

(a) The Decision is null and void;

(b) The Zoning Approval is hereby reinstated as a final and unappealable determination;

And awarding:

(c) economic damages;

(d) compensatory damages;

(e) punitive damages;

(f) attorney's fees and costs associated with this action;

And granting such other relief as the Court deems just and proper.

## COUNT FIVE
## Defamation

72.     Paragraphs 1 through 71 are incorporated by reference as if fully set forth herein.

73.     During the course of the above described proceedings, including at a time just three weeks prior to the Decision on February 17, 2022, certain of the Defendants engaged in a course of conduct which was malicious, defamatory and unduly prejudicial to the Plaintiffs.

74.     For example, one of the Borough Council Board Members posted in a public forum that fellow Board Member LaToya Monroe "got kickbacks from Restore Medical Marijuana to pay-off your $60,000 foreclosure home".

75.     As recently as October 20, 2022, during a public meeting, Defendant Sharon Council-Harris repeatedly advised those in attendance that Plaintiffs had paid to Ms. Monroe $60,000.

76.     These false and malicious public accusations regarding payment of a bribe were made in a concerted effort to deny Plaintiffs their property rights without due process and equal protection of the laws.

77.     Both the written posting, and the public statements, were published to members of the public with the purpose of impairing the Plaintiffs' reputation and standing in the community.

78.     The statements by the Defendants about the Plaintiffs were intended to and did convey to the recipients thereof, either directly or by implication, that Plaintiffs had engaged in criminal and illegal conduct and had sought to financially benefit from such conduct.

79.     The statements that Plaintiffs directed money in an illegal or criminal manner are false.

80.     The publication and circulation of the false statements was with the intention of damaging Plaintiffs' business, reputation, and standing in the community, all to their great financial loss and damage.

81.     The Defendants acted with actual malice in the publication of the defamatory statements about the Plaintiffs.

82.     The defamatory statements identified herein were published with knowledge of their falsity and with reckless disregard for their falsity.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor awarding:

*1475476.1*

(a)  economic damages;

(b)  compensatory damages;

(c)  punitive damages;

(d)  attorney's fees and costs associated with this action;

And granting such other relief as the Court deems just and proper.

## COUNT SIX
## Claim Against Defendants for
## Violation of Article 1, Section 10 of the Pennsylvania Constitution

83.     Paragraphs 1 through 82 are incorporated by reference as if fully set forth herein.

84.     The Decision is improper, illegal and violative of Article 1, Section 10 of the Pennsylvania Constitution.

85.     The Decision results in an improper taking of property without fair compensation.

86.     Plaintiffs seek a judgment finding the Decision null and void and prohibiting the Defendants from seeking to limit and/or restrict the Plaintiffs use of the Property consistent with the Zoning Approval.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor declaring:

(a)  The Decision is null and void;

(b)  The Zoning Approval is hereby reinstated as a final and unappealable determination;

And granting such other relief as the Court deems just and proper.

## COUNT SEVEN
## Action in Mandamus

87.     Paragraphs 1 through 86 are incorporated by reference as if fully set forth herein.

88.     Defendants, through their Decision, have failed to honor the Zoning Approval issued by the Zoning Officer, a duly authorized representative of the Borough of Yeadon.

89.     Plaintiffs have sustained substantial damages as a direct result of the Decision, including but not limited to the loss of value of Plaintiffs' Property, current and future profits and good will, as well as the value of Plaintiffs' time and resources invested in the Property.

90.     Plaintiffs have no adequate remedy at law.

91.     42 Pa. C.S.A. §8303 provides,

> "A person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal."

92.     Allowing the Defendants to "deny the zoning permit" some fifteen months after the Zoning Approval and after the expenditure of millions of dollars in reliance on the Zoning Approval eviscerates Plaintiffs', and all citizens', fundamental right to rely upon the finality of governmental actions.

93.     Plaintiffs seek a judgment finding the Decision null and void and prohibiting the Defendants from seeking to limit and/or restrict the Plaintiffs use of the Property consistent with the Zoning Approval.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor declaring:

(a) The Decision is null and void;

(b) The Zoning Approval is hereby reinstated as a final and unappealable determination;

And awarding:

(c) economic damages;

17

(d)  compensatory damages;

(e)  punitive damages;

(f)  attorney's fees and costs associated with this action;

And granting such other relief as the Court deems just and proper.

## COUNT EIGHT
## Claim Against Defendants for Interference with Business Relations

94.     Paragraphs 1 through 93 are incorporated by reference as if fully set forth herein.

95.     Plaintiffs, in their operation of a medical marijuana dispensary, engage in hundreds of transactions on a daily basis related to the fulfillment of medical certifications for the general public.

96.     Defendants actions, as aforesaid, in intentionally refusing to recognize a lawfully issued Zoning Approval, have caused harm to the Plaintiffs' operation generally and to its ability to fulfill medical certifications for the general public.

97.     The actions of the Defendants in denying the zoning permit were taken without lawful basis, privilege or justification.

98.     Plaintiffs have sustained substantial damages as a direct result of the Decision, including but not limited to the loss of current and future profits in excess of $10 million.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor:

(a)  Awarding economic damages;

(b)  Awarding compensatory damages;

(c)  Awarding punitive damages;

(d)  Granting such other relief as the Court deems just and proper.

Respectfully submitted,

RILEY RIPER HOLLIN & COLAGRECO

Date:  October 25, 2022          By:  _____*Edward J. Greene*_____

EDWARD J. GREENE, ESQUIRE
Attorney ID Number 36967
JOHN A. JAROS, ESQUIRE
Attorney ID Number 49186
717 Constitution Drive, Suite 201
Post Office Box 1265
Exton, Pennsylvania  19341
(610) 458-4400
edg@rrhc.com; johnj@rrhc.com;
*Attorneys for Plaintiffs*
*Restore Integrative Wellness Center, LLC*
*and R&R Yeadon, LLC*

*1475476.1*

Case 2:22-cv-02888-CFK   Document 4   Filed 07/29/22   Page 1 of 6

EXHIBIT A

# BOROUGH OF YEADON



### Yeadon Office
Church Lane and Baily Road
P.O. Box 5187 Yeadon, PA 19050
610-284-3110 • Fax 610-284-2138

November 24, 2020

Restore Integrative Wellness Center LLC
8003 Old York Rd
Elkins Park, PA 19217

RE:    Zoning Use Application for 735 Church Lane, Yeadon, PA 19050

Dear Mr. Vital Patel:

Please be advised that I am the Yeadon Borough Zoning Officer. I have reviewed your Zoning Use Application for a Medical Marijuana Dispensary as it pertains to the property located at 735 Church Lane, Yeadon, PA 19050. I determined that your request is consistent with the Yeadon Borough Zoning Ordinance as listed below:

Article IX NC Neighborhood Commercial District Section 300-52 Use Regulations
A.   Permitted principal uses
   4)   Professional or business offices, agencies or studios

Please allow this letter to serve as you official Approval zoning notice.

Thank you for your time and patience with us as we ensured your compliance with the Yeadon Borough Zoning Ordinance. If you have any questions, please feel free to contact me at 610-284-3110 Ext. 124 or via email at rstokes@yeadonborough.com.


### *RUFUS STOKES*
Rufus Stokes
Code Director & Zoning Officer

EXHIBIT B

BEFORE THE ZONING HEARING BOARD OF THE BOROUGH OF YEADON
DELAWARE COUNTY, PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: SHARON O. COUNCIL HARRIS, | : | |
| and CONCERNED RESIDENTS OF YEADON | : | NO. 22-01 |
| vs. | : | |
| RESTORE INTEGRATIVE | : | |
| WELLNESS CENTER, LLC | : | |

## MEMORANDUM , FINDINGS, CONCLUSION AND ORDER
### PREAMBLE

Ms. Sharon O. Council Harris and Concerned Residents of Yeadon have challenged the prior approval of a marijuana dispensary in the Borough pursuant to Yeadon Borough Zoning Code, section 300-52.A.(4). The dispensary is owned by Restore Integrative Wellness Center. LLC.

A public hearing was held at the Yeadon Borough Municipal Building on Wednesday, January 19, 2022, at 7:30 p.m. pursuant to public notices as required by the Pennsylvania Municipalities Planning Code and the Yeadon Borough Zoning Ordinance and Regulations promulgated thereunder. Notice of said hearing was advertised.

Zoning Hearing Board members Chrissy Quarttro, Ricco Keyes and Peter Rykard were in attendance. Also present were: Rufus Stokes, the Borough's Zoning Officer; and the Zoning Hearing Board Solicitor, John F. Innelli, Esquire. The applicants, through their counsel and expert, presented evidence related to the applicable Zoning Ordinances and Regulations promulgated by the Pennsylvania Municipalities Planning Code and the Yeadon Borough Zoning Code. Members of the neighborhood attended and spoke.

Restore Integrative Wellness Center. LLC (trading as Restore Medical Marijuana Dispensary. referred herein as "Restore") did not appear at the hearing, despite having notice of the hearing.

DISCUSSION

The proposed marijuana dispensary in Yeadon Borough was initially approved as a permitted principal use pursuant to Yeadon Borough Zoning Code, section 300-52.A.(4), which states in pertinent part:

A.     Permitted principal uses.  In the NC Neighborhood Commercial District, land, buildings or premises shall be used by right only for one or more of the following:

     (4) Professional or business offices, agencies or studios;

      \*      \*      \*      \*      \*      \*      \*      \*

Ms. Council Harris and Concerned Residents have asserted that, "the proposed use is a type of retail establishment, and is not a professional or business office, agency, or studio."  In support thereof they pointed out that the zoning ordinance did not define what constitutes a business office, an agency or studio.  Due to the lack of specificity in the Borough's statute, Ms. Council Harris and her colleagues referred the Zoning Hearing Board members to the Oxford dictionary definitions for office, agency and studio.  A simple reading of the definitions for those terms demonstrates that they do not properly apply to a medicinal marijuana dispensary.

A review of the subsequent sections of the Yeadon Borough Zoning Code, in particular section 300-52.A.(1), pertaining to permitted principal uses, and section 300-52.D.(4), pertaining to conditional uses, show the proposed use fails to meet the requirements for a retail store. Section 300-52.A(1) states:

     Retail stores designed primarily to provide retail goods to residents
     of the immediately surrounding area, and with a gross floor area not
     in excess of 2,500 square feet, excluding dollar stores, thrift stores,
     and produce stores;

2

Section 300-52.D(4) states, in pertinent part:

> D.    Conditional uses.  The following uses shall be permitted as conditional
>       uses authorized by the Borough Council on the basis of the standards
>       set forth in Article XVII and provided that the condition set forth at
>       Subsection F is met. If the condition set forth in Article XVII is not
>       met, then the use shall not be permitted:
>
>       (4) Banks or other financial institutions

Under the Yeadon Borough Zoning Ordinance and Regulations, Restore is precluded from being located in the NC Neighborhood Commercial District.  The building currently held by Restore was a bank or other financial institution previously, it is 3,000 square feet in size. Retail stores, which is what Restore is, are limited to 2,500 square feet.  Consequently, Restore cannot avail itself of a conditional use.

## CONCLUSION

Because Restore is not a business office, an agency or studio and cannot avail itself of a conditional use it is precluded from being located in the NC Neighborhood Commercial District.

Restore's market is beyond the Borough and it is heavily advertising in a manner which is designed to draw business from a broader region than Yeadon's NC-Neighborhood Commercial District.  If the Borough Council were to approve Restore's presence within the Borough it would be appropriate and allowable in the RC – Regional Commercial District.

**YEADON ZONING HEARING BOARD**
**Ricco Keyes, Member**
**Peter Rykard, Member**
**Chrissy Quattro, Member**

3